IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

SHANNON D. PAYTON,

    Plaintiff,

vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

No. CIV S-05-1852 PAN

ORDER

———————————————/

The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will grant Plaintiff's motion for summary judgment, deny Commissioner's cross-motion for summary judgment, and remand this action to the Commissioner for immediate payment of benefits.

/////

/////

/////

1

I. <u>Factual and Procedural Background</u>

In a decision dated March 19, 2005, the ALJ determined Plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review. The ALJ found Plaintiff has severe impairments of degenerative disc disease resulting from her status post L5-S1 decompressive laminectomy and carpal tunnel syndrome, but that these impairments do not meet or medically equal a listed impairment; Plaintiff's allegations regarding her limitations were not credible; Plaintiff has the residual functional capacity to walk, stand, stoop, and bend occasionally, and sit frequently; Plaintiff must have the option to change positions from sitting to standing frequently; Plaintiff

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 <u>et seq</u>. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. § 1382 <u>et seq</u>. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. <u>See</u> 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. <u>Bowen</u>, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. <u>Id</u>.

2

can lift, carry, push, and pull five pounds frequently and 10 pounds occasionally; Plaintiff's ability to lift overhead is moderately limited; Plaintiff's ability to perform gross manipulation with her right, dominant hand is slightly limited; Plaintiff experiences moderate to severe pain that limits her ability to perform routine, repetitive tasks; Plaintiff requires only occasional supervision; Plaintiff has the residual function to perform a reduced range of sedentary work; a significant number of jobs exist in the national economy that Plaintiff could perform; and Plaintiff is not disabled. Administrative Transcript ("AT") 22-23.

Plaintiff contends that the ALJ committed numerous errors. First, Plaintiff argues that the ALJ failed to properly weigh the medical evidence. Second, Plaintiff asserts that the ALJ improperly relied upon the Medical-Vocational rules ("the grids") as a framework for his decision making. Third, Plaintiff states that the ALJ failed to properly discuss or evaluate Plaintiff's allegations of pain. Finally, Plaintiff alleges that the ALJ failed to properly utilize the vocational expert.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)). Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance. Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)). The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir.

1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

III. Analysis

    a. The ALJ's Weighing of the Medical Evidence in this Case Was in Error.

The ALJ gave controlling weight to the initial opinion of Plaintiff's treating physician. In making his determination that this opinion was most supported by the evidence in the record, the ALJ refused to credit this treating physician's later opinion. In addition, the ALJ dismissed additional opinions in the record that were overly generous in their assessment of Plaintiff's residual functional capacity. The ALJ's weighing of the evidence was in error.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Lester, 81 F.3d at 830. While a treating professional's opinion generally is accorded superior weight, if

1  it is contradicted by a supported examining professional's opinion (e.g., supported by different
2  independent clinical findings), the ALJ may resolve the conflict.  <u>Andrews v. Shalala</u>, 53 F.3d
3  1035, 1041 (9th Cir. 1995) (citing <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)).  In
4  any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical
5  findings.  <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,
6  minimally supported opinion rejected); <u>see</u> <u>also</u> <u>Magallanes</u>, 881 F.2d at 751.  The opinion of a
7  non-examining professional, without other evidence, is insufficient to reject the opinion of a
8  treating or examining professional.  <u>Lester</u>, 81 F.3d at 831.

9        Dr. Padgett began treating Plaintiff on June 3, 2002.  AT 322.  On October 15,
10  2003, Dr. Padgett opined that Plaintiff was capable of noncontinuous standing and walking for
11  three hours in an eight hour day with constant, permissive change between standing and sitting
12  permitted.  AT 381.  Dr. Padgett also stated that Plaintiff was limited to a maximum of 45
13  minutes of continuous sitting and 15 minutes of continuous standing or walking.  <u>Id.</u>  Dr.
14  Padgett's opinion did not indicate that Plaintiff had any postural, manipulative, visual,
15  communicative, or environmental restrictions.  The ALJ gave controlling weight to Dr. Padgett's
16  October functional assessment because it was consistent with the weight of the evidence.  AT 20.

17        Nearly a year later, on September 29, 2004, Dr. Padgett offered another opinion
18  about Plaintiff's residual functional capacity.  AT 431-35.  In this assessment, Dr. Padgett
19  amended his earlier opinion about Plaintiff's exertional limitations; reducing her total time of
20  standing, walking, or sitting to one hour each with no more than 45 minutes of uninterrupted
21  sitting and 15 minutes of uninterrupted standing.  AT 432.  Dr. Padgett also reduced Plaintiff's
22  uninterrupted walking time to 10 minutes.  <u>Id.</u>  In reaching this conclusion, Dr. Padgett relied
23  upon his observation of Plaintiff as well as other objective evidence in the record.  AT 432-33.

24        Dr. Padgett also elaborated on Plaintiff's other limitations.  According to Dr.
25  Padgett, Plaintiff was limited to lifting and carrying no more than 10 pounds occasionally.  In
26  addition, Dr. Padgett opined that Plaintiff was occasionally limited in her right and left hand, as

5

1  well as in her feet. AT 432-33. It was the opinion of Dr. Padgett that while Plaintiff could
2  frequently feel with her hands and arms, she could only occasionally reach, handle, or push and
3  pull. AT 433. Dr. Padgett precluded Plaintiff from all postural activities, with the exception of
4  permitting only occasional kneeling and crawling. Id. Dr. Padgett believed that Plaintiff's
5  physical impairments required her to avoid even moderate exposure to heights, moving
6  machinery, and vibrations. AT 434.

7  The ALJ gave substantial weight to this later opinion, but refused to give it
8  controlling weight because the restrictions on sitting were unsupported by the evidence in the
9  record. AT 20. Furthermore, the ALJ noted that it was unlikely that Dr. Padgett was able to
10 observe Plaintiff for the necessary period of time in order to reach his conclusion. Id. As a
11 result, the opinion appeared to be based on Plaintiff's subjective complaints which the ALJ
12 discredited. Given the differing opinions contained in the record, the ALJ provided specific and
13 legitimate reasons supported by substantial evidence in the record for discounting Dr. Padgett's
14 November 2004 assessment of Plaintiff's residual function.

15 The opinions of treating physicians must be supported by the record as a whole.
16 Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004).
17 It is not apparent that the entire record supports Dr. Padgett's November 2004 opinion. The
18 limitations imposed by Dr. Padgett on Plaintiff's ability to walk, stand, or sit differ significantly
19 from those of the other physicians contained in the record.

20 Examining physician Dr. Quinones evaluated Plaintiff on August 31, 2003. AT
21 349-53. In his assessment, Dr. Quinones found no neuromuscular or muskoskeletal
22 abnormalities. AT 352. While finding significant limitations on Plaintiff's ability to use both of
23 her hands, Dr. Quinones found no limitations on Plaintiff's mobility or posture. AT 352-53.

24 Other evidence in the record supports this finding. In their review of Plaintiff's
25 medical records, the State Agency opined that Plaintiff was able to stand, walk, and sit for up to
26 six hours in an eight hour day. AT 355. The only qualification of this opinion was that Plaintiff

6

should be able to move for one to two minutes every hour in order to stretch. Id.  The opinions of nonexamining physicians cannot serve as the sole basis to discredit the opinions of treating or examining physicians. Magallanes, 881 F.2d at 752.  However, this opinion is bolstered by the findings of Dr. Feinberg, an examining pain specialist who noted that Plaintiff's was in no acute distress, displayed no pain behavior, had no atrophy of the lower body, normal leg strength, could walk on her heels and toes, and perform a deep squat.  AT 457.[2]

The ALJ also noted that Dr. Padgett's opinion relied extensively on Plaintiff's subjective complaints.  Credibility determinations do factor into evaluations of medical evidence. Webb v. Barnhart, 433 F.3d 683, 688 (9th Cir. 2005); see e.g. Batson, 359 F.3d at 1195.  When there are legitimate reasons to doubt a plaintiff's complaints, the opinions upon which those complaints are based are also questionable.  See Morgan v. Comm'r of Soc. Sec. Admin., 169, F.3d 595, 602 (9th Cir. 1999)("A physical opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" (quoting Fair v. Bowen, 885 F.2d 597, 605 (9th Cir. 1989))).  As explained in detail below, legitimate reasons to doubt Plaintiff's credibility exist in this case.

It is apparent that Dr. Padgett relied heavily on Plaintiff's subjective complaints in reaching his conclusion that she was unable to stand, walk, or sit for more than one hour.  There are few objective clinical findings in Dr. Padgett's report to support his conclusion.  While Dr.

---

[2] Physical therapist Rachel Feinberg opined that Plaintiff was limited to no more than 30 minutes sitting, five minutes standing, and one mile walking.  AT 466.  While this opinion supports Dr. Padgett's November 2004 assessment, the ALJ is not obligated to give this opinion any weight as Ms. Feinberg is not an acceptable medical source under the regulations whose opinion can form the basis for a finding of disability.  20 C.F.R. § 404.1513(a); see also Gomez v. Chater, 74 F.3d 967, 970-71 (9th Cir. 1996)(holding that in assessing medical opinions, the ALJ is obligated to give greater weight to the medical opinions of treating and examining physicians over those from medical sources not listed in 20 C.F.R. § 404.1513(a)). Rather, Ms. Feinberg is listed among "other sources" who can provide evidence that an ALJ may consider in reaching his findings.  20 C.F.R. § 404.1513(d).

1. Padgett noted that he relied on EMGs and MRIs in his assessment, he also relied heavily upon
2. his own and others' observations of Plaintiff. AT 432. The medical record contains few
3. instances of any examination conducted by Dr. Padgett that would support his medical
4. conclusion. Rather, in the six times Dr. Padgett met with Plaintiff in the period between his
5. October 2003 and November 2004 opinions, he does not appear to make any new objective
6. findings. AT 442-45, 448, 451-52.

   The ALJ properly discounted the November 2004 opinion of Dr. Padgett. However, the ALJ erred in his assessment of the opinion of Dr. Quinones, the examining physician in this case. As a result of this error, the opinion of Dr. Quinones as it concerns Plaintiff's ability to use her hands must be credited.

   In his examination, Dr. Quinones found Plaintiff somewhat limited in her ability to grasp and her fine motor skills. AT 353. Dr. Quinones made no distinction between Plaintiff's right and left hand in this finding. However, in spite of his statement that he believed Plaintiff to be more limited that Dr. Quinones believed her to be, the ALJ determined that Plaintiff's ability to perform gross manipulation was limited solely to her right hand. The ALJ gave no evaluation of Plaintiff's left hand and provided no reasons for discrediting this opinion of Dr. Quinones. The ALJ's conclusion is not supported by substantial evidence in the record.

   It cannot be said that the opinion of the examining physician, Dr. Quinones, was trumped by the opinion of the treating physician, Dr. Padgett. The October 2003 opinion from Dr. Padgett upon which the ALJ relied makes no findings as they concern Plaintiff's manipulative limitations. As a result, it must be assumed Dr. Padgett did not find Plaintiff to have any problems with her hands in his 2003 assessment. Absent additional findings by the ALJ, Dr. Padgett's opinion that Plaintiff has no limitations in her hands could support a conclusion that Dr. Quinones overstated Plaintiff's manipulative impairment.

   However, the ALJ stated that he believed Plaintiff to be somewhat more limited that Dr. Quinones found her. AT 19. The ALJ makes no statement as to whether this

shortcoming in Dr. Quinones' findings applied to his opinion about Plaintiff's mobility or her manipulative restrictions.  Without greater clarity from the ALJ, it must be presumed that these shortcomings applied to Dr. Quinones' entire opinion.  Consequently, the implicit finding of no manipulative impairment by Dr. Padgett in October 2003 cannot logically support a rejection of Dr. Quinones' opinion that Plaintiff is somewhat limited in her ability to use both of her hands. Applying Dr. Padgett's October 2003 findings to reject Dr. Quinones' opinion would lead to the conclusion that Plaintiff has none or few limitations in her ability to use her hands.  Such a finding is obviously at odds with the ALJ's conclusion that Plaintiff is more limited than Dr. Quinones' says she is.

The credited opinion from Dr. Padgett offers no opinion about Plaintiff's manipulative limitations.  However, Dr. Quinones' opinion that Plaintiff has limitations in her ability to perform gross and fine motor skills is supported by other evidence in the record.  State Agency doctors opined that Plaintiff was limited in her ability to perform handling (gross) and fingering (fine) manipulation.  AT 357.  State Agency doctors also noted that Plaintiff was limited in her ability to feel.  Id.  As indicated by the letters "R" and "L" written in the notes section of the State Agency report, these limitations applied to both Plaintiff's right and left hands, and precluded her from doing anything more than frequent manipulation.  Id.

The ALJ is charged with resolving contradictions in the medical evidence. Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  When the ALJ's interpretation of that evidence is reasonable, it is not the Court's province to second guess it.  Fair, 885 F.2d at 604. The ALJ provided specific and legitimate reasons supported by substantial evidence in the record for crediting the October 2003 opinion of Plaintiff's treating physician over his November 2004 opinion.

However, the ALJ failed to provide reasons for rejecting Dr. Quinones' opinion about Plaintiff's hands.  Where the ALJ fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, that opinion is credited "as a matter of law."

Lester, 81 F.3d 821 at 834 (citing Hammock, 879 F.2d at 502).  As a discussed in detail below, because of this error, immediate payment of benefits is required.

       b.  The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain.

The ALJ found Plaintiff not credible.  In reaching this conclusion, the ALJ noted that Plaintiff's subjective complaints of pain and the limitations resulting therefrom were not consistent with the medical reports contained in the record.  AT 19.  Furthermore, the ALJ found that Plaintiff's daily activities evidenced a level of impairment less severe than claimed.  Id.  The ALJ's credibility determination is based upon proper reasons supported by substantial evidence in the record and will not be disturbed.

The ALJ determines whether a disability applicant is credible, and the court defers to the ALJ's discretion if the ALJ used the proper process and provided proper reasons.  See, e.g., Saelee, 94 F.3d at 522.  If credibility is critical, the ALJ must make an explicit credibility finding. Albalos v. Sullivan, 907 F.2d 871, 873-74 (9th Cir. 1990); Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring explicit credibility finding to be supported by "a specific, cogent reason for the disbelief").

In evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors.  Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc).  If there is objective medical evidence of an impairment, the ALJ then may consider the nature of the symptoms alleged, including aggravating factors, medication, treatment and functional restrictions.  See id. at 345-47.  The ALJ also may consider: (1) the applicant's reputation for truthfulness, prior inconsistent statements or other inconsistent testimony, (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment, and (3) the applicant's daily activities.  Smolen, 80 F.3d at 1284; see generally SSR 96-7P, 61 FR 34483-01; SSR 95-5P, 60 FR 55406-01; SSR 88-13.  Work records, physician and third party testimony about nature, severity and effect of symptoms, and inconsistencies between testimony and conduct also may be relevant.  Light v. Social Security

1  Administration, 119 F.3d 789, 792 (9th Cir. 1997).  A failure to seek treatment for an allegedly
2  debilitating medical problem may be a valid consideration by the ALJ in determining whether the
3  alleged associated pain is not a significant nonexertional impairment.  See Flaten v. Secretary of
4  HHS, 44 F.3d 1453, 1464 (9th Cir. 1995).   The ALJ may rely, in part, on his or her own
5  observations, see Quang Van Han v. Bowen, 882 F.2d 1453, 1458 (9th Cir. 1989), which cannot
6  substitute for medical diagnosis.  Marcia v. Sullivan, 900 F.2d 172, 177 n.6 (9th Cir. 1990).
7  "Without affirmative evidence showing that the claimant is malingering, the Commissioner's
8  reasons for rejecting the claimant's testimony must be clear and convincing."  Morgan, 169 F.3d
9  at 599.

10         The ALJ found an objective basis for Plaintiff's complaints of pain and disability.
11  However, the ALJ noted that substantial evidence in the record failed to document an impairment
12  as limiting as Plaintiff claimed.  Radiology findings after Plaintiff's laminectomy showed no
13  evidence of instability and only mild degeneration.  AT 19.  The ALJ also described the opinions
14  of Dr. Padgett who referred Plaintiff to a pain management center for treatment of the physical
15  and mental components of Plaintiff's pain.  Id.  At the center, Ms. Feinberg stated that Plaintiff's
16  inactivity appeared to be partially self-imposed out of fear of injury.  AT 467.

17         The ALJ found Plaintiff able to perform significant daily activities that were
18  inconsistent with disabling pain.  AT 19.  The ALJ noted that Plaintiff handled her personal
19  grooming needs, regularly prepared meals, and performed light housework.  Id.  In addition, the
20  ALJ found that Plaintiff was able to drive a car and socialize regularly, as well as perform regular
21  physical therapy and exercise.  Id.

22         Plaintiff's ability to engage in some daily activities does not compromise her
23  subjective complaints of pain.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004);
24  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); Fair, 885 F.2d at 603 (holding that one
25  need not be "utterly incapacitated" in order to be disabled).  However, the ALJ found that
26  Plaintiff spent a substantial part of her day "standing, walking, sitting, lifting, carrying, pushing,

11

and pulling;" activities consistent with those necessary for productive work. AT 19; see Morgan, 169 F.3d at 600 (finding claimant's ability to fix meals, do laundry and yard work, and occasionally care for a friend's child sufficient to undermine complaints of pain). Such a finding was supported by substantial evidence.[3]

        The lack of objective medical evidence to corroborate Plaintiff's subjective complaints of pain, in and of itself, is not a proper basis to discredit Plaintiff. See Smolen, 80 F.3d at 1285. However, this was not the sole basis upon which the ALJ judged Plaintiff's credibility. Given the additional findings as they concern Plaintiff's daily activities, the ALJ's assessment of Plaintiff's credibility was not in error. The factors considered by the ALJ were all valid and supported by the record. The ALJ's credibility determination was based on permissible grounds and will not be disturbed.

    c. <u>The Award of Benefits Is Required because of the ALJ's Reliance on an Incomplete Hypothetical Question.</u>

        The ALJ heard testimony from a vocational expert (VE). In his findings, the ALJ relied upon one of the responses from this expert to conclude that Plaintiff was not disabled. The ALJ's reliance on this hypothetical to support his conclusion that Plaintiff was not disabled was in error.

        Hypothetical questions posed to a vocational expert must set out all the substantial, supported limitations and restrictions of the particular claimant. Magallanes, 881 F.2d at 756. If a hypothetical does not reflect all the claimant's limitations, the expert's testimony as to jobs in the national economy the claimant can perform has no evidentiary value.

---

[3] The exertional limitations identified by Plaintiff are specifically addressed in the State Agency functional assessment. AT 355. This assessment also addresses postural, manipulative, visual, communicative, and environmental limitations. AT 356-58. Despite evidence in the record concerning Plaintiff ability to manipulate with both of her hands, the ALJ did not include these limitations in his list of daily activities that Plaintiff performed that are consistent with work. AT 19.

1  DeLorme v. Sullivan, 924 F.2d 841, 850 (9th Cir. 1991).  While the ALJ may pose to the expert a
2  range of hypothetical questions, based on alternate interpretations of the evidence, the
3  hypothetical that ultimately serves as the basis for the ALJ's determination must be supported by
4  substantial evidence in the record as a whole.  Embrey v. Bowen, 849 F.2d 418, 422-23 (9th Cir.
5  1988).  That did not happen in this case.

6         Dr. Quinones found Plaintiff slightly limited in her ability to perform fine
7  manipulation with her hands.  AT 353.  The ALJ failed to properly reject this opinion, as a result,
8  it must be credited as a matter of law.  None of the hypothetical questions offered by the ALJ to
9  the VE address limitations in fine manipulation.  Indeed, the ALJ specifically limited his
10 hypothetical questions to impairments in gross, rather than fine, manipulation.  AT 60.  Reliance
11 on a hypothetical that failed to encompass this significant manipulative limitation was in error.

12        The remaining question is whether to remand this case to the ALJ or to order the
13 payment of benefits. "The decision whether to remand the case for additional evidence or simply
14 to award benefits is within the discretion of the court." Stone v. Heckler, 761 F.2d 530, 533 (9th
15 Cir. 1985). Generally, the Court will direct the award of benefits "in cases where no useful
16 purpose would be served by further administrative proceedings or where the record has been
17 thoroughly developed." Varney v. Secretary of Health and Human Services, 859 F.2d 1396, 1399
18 (9th Cir. 1987).

19        The ability to use the fingers is encompassed in an assessment of fine
20 manipulation while the ability to handle is addressed through assessment of gross manipulation.
21 This distinction is important as the performance of fine and gross manipulations are criteria
22 within the grids for determining disability.  See 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.01.B.2.a..
23 The ability to finger is needed to perform most unskilled, sedentary work.  SSR 85-15.

24        Plaintiff presented the VE with a hypothetical that recognized her limitations on
25 fine manipulation.  AT 64.  The VE responded that there were no jobs available in the national
26 economy for which Plaintiff was qualified.  Id.  Given this testimony from the VE, a finding of

13

1  disability at step five of the sequential analysis is required.  See Benecke, 379 F.3d at 595 (9th
2  Cir. 2004).
3          For the foregoing reasons, this matter will be remanded under sentence four of 42
4  U.S.C. § 405(g) for immediate payment of benefits.
5          Accordingly, IT IS HEREBY ORDERED that:
6          1.  Plaintiff's motion for summary judgment is granted.
7          2.  The Commissioner's cross motion for summary judgment is denied.
8          3.  This action is remanded to the Commissioner for immediate payment of
9  benefits.
10 DATED:  October 26, 2006.

_____
UNITED STATES MAGISTRATE JUDGE

13/Payton..ss.wpd

14